```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF PUERTO RICO
```

**United State of America**

    **v.**                                    Case No. 08-cr-36-PJB
                                                    Opinion No. 2008 DNH 206

**Anibal Acevedo-Vila, et al.**

## MEMORANDUM AND ORDER

Two indictments have been consolidated for trial. The indictments name thirteen defendants in seventeen counts spanning an eight-year period. The pending charges concern several different criminal schemes. One group of counts stems from an alleged conspiracy to make, receive, and conceal illegal contributions to defendant Anibal Acevedo Vila's 2000 and 2002 Resident Commissioner campaigns. A second group of counts results from an alleged scheme to deprive the Commonwealth of Puerto Rico of Acevedo Vila's honest services as governor. Still other counts charge a conspiracy to defraud the Internal Revenue Service ("IRS") of income taxes owed by Acevedo Vila and the making of false statements to the agents of the IRS and the Federal Bureau of Investigation ("FBI").

Acevedo Vila has filed a motion seeking to have the charges against him severed from the charges against defendant Candido Negron Mella so that Negron Mella can testify as a defense witness at Acevedo Vila's trial.[1]  Defendants Robert M. Feldman and Marvin I. Block have filed motions seeking to have the charges against them transferred to the Eastern District of Pennsylvania where they claim the charges can be more conveniently tried.  For the reasons set forth below, I grant defendants' motions.

## I.   BACKGROUND

Block and Feldman are named as defendants only in Count 1 of the original indictment, which charges that they and other defendants were involved in a conspiracy to make, receive, and conceal illegal campaign contributions to Acevedo Vila's Resident Commissioner campaigns.  Negron Mella is charged in Counts 1, 2,

---

[1] Acevedo Vila prefers to have the charges against him in Counts 1-3 severed from the main case rather than to have the charges against Negron Mella severed.  The government argues that if any of the charges should be severed, it is the charges against Negron Mella.  I agree with the government on this point. While Acevedo Vila should be given a chance to present Negron Mella's testimony, he is not entitled to dictate to the government the circumstances under which the charges against him will be tried.  Thus, although a severance is warranted, it is the charges against Negron Mella that should be severed rather than the charges against Acevedo Vila.

and 3 of the indictment.  The conspiracy charged in Count 1 was allegedly carried out in three phases.  The first phase (the "Collaborator Contribution Scheme") took place between September 1999 and May 2000.  During this period, Acevedo Vila, Ramon Velasco Escardille, Edwin Colon Rodriguez, and other unnamed conspirators allegedly recruited contributors to pay off Acevedo Vila's campaign debt to an unnamed corporation.  The defendants implemented this scheme by causing Acevedo Vila's supporters to make contributions directly to the corporation without recording the contributions in the books and records of Acevedo Vila's campaign committee.  The campaign committee also failed to report the contributions to the Federal Election Commission ("FEC") as the law required.  To further conceal the contributions, false invoices were prepared to make it appear as if the contributions were payments for services rendered by the corporation to the contributors.  More than $180,000 in illegal campaign contributions allegedly were received by Acevedo Vila's campaign committee in connection with the Collaborator Contribution Scheme.  (See Indictment, Doc. No. 9, at 8-9, 13-16.)

   The second phase of the conspiracy (the "Family and Staff Conduit Contribution Scheme") occurred between September 2001 and December 2002.  Acevedo Vila and Luisa Inclan Bird allegedly

solicited members of Acevedo Vila's family, as well as staff members at the Resident Commissioner's office, to serve as conduits for illegal campaign contributions.  The conduits made contributions to Acevedo Vila's campaign committee, and Acevedo Vila and Inclan Bird reimbursed the conduits for their contributions with cash or checks.  The campaign committee concealed the true nature of the conduit contributions by filing false contribution reports with the FEC.  More than $10,000 in conduit contributions allegedly were received by Acevedo Vila's campaign committee in connection with the Family and Staff Conduit Contribution Scheme.  (Id. at 9, 16-18.)

The third phase of the conspiracy (the "Philadelphia Conduit Contribution Scheme") took place between February 2002 and June 2003.  Acevedo Vila, Feldman, Negron Mella, Salvatore Avanzato, Jorge Velasco Mella, and Eneidy Coreano Salgado allegedly worked together to obtain and conceal the true nature of conduit contributions ostensibly made by a group of contributors in the Philadelphia, Pennsylvania area.  More than $130,000 in conduit contributions allegedly were received by Acevedo Vila's campaign committee during this phase of the conspiracy.  (Id. at 10-13, 18-26.)

Counts 2 and 3, which name Negron Mella, along with Acevedo Vila and Velasco Mella, concern two statements to the FEC that allegedly were knowingly false because of the supposed Philadelphia Conduit Contribution Scheme.  (Id. at 26-27.)

## II.  ANALYSIS

### A.  Severance

Rule 14(a) of the Federal Rules of Criminal Procedure permits a court to sever charges against multiple defendants that have been joined for trial if the prospect of a single trial "appears to prejudice a defendant or the government."  The U.S. Supreme Court has made it clear, however, that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro v. United States, 506 U.S. 534, 539 (1993).  One of the circumstances in which a severance may be warranted is "if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial."  Id.

To obtain a severance based on the anticipated exculpatory testimony of a co-defendant, a defendant must establish that the

anticipated testimony will be exculpatory, that there is a "bona fide need for the testimony," and that "the codefendant will in fact testify if the cases are severed." United States v. Smith, 46 F.3d 1223, 1231 (1st Cir. 1995).  Even if these requirements are satisfied, a court must also "(1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) consider whether the testimony would be subject to substantial, damaging impeachment; (3) assess the counter arguments of judicial economy; and (4) give weight to the timeliness of the motion" before deciding whether severance is warranted.  Id.

    In the present case, the relevant factors weigh in favor of severance.  First, Negron Mella's testimony will be exculpatory as to Acevedo Vila and may well be necessary to rebut the government's contention that Acevedo Vila was a culpable participant in the Philadelphia Conduit Contribution Scheme. Acevedo Vila's principle defense to this aspect of the conspiracy count is that he was unaware of the scheme's existence.  Negron Mella is identified in the indictment as a central participant in the Philadelphia Conduit Contribution Scheme, and his interview reports with the FBI suggest that he was one of the few active participants in the scheme who had regular contact with Acevedo

Vila.  Among other things, Negron Mella allegedly told the FBI the following:

> Negron never told Acevedo Vila that he was giving Acevedo Vila straw contributions.  Acevedo Vila never asked or discussed with Negron how Negron was able to get so many people in the Philadelphia, Pennsylvania, and New Jersey areas involved in the campaign of a Puerto Rican politician.  Acevedo Vila never acted curious about who these people were that were making large contributions to his campaign.

(FBI 302 Interview with Negron Mella, Doc. No. 209-3 (Ex Parte), at 4.)  Negron Mella also filed an affidavit in this case in which he states that he "never observed Mr. Acevedo Vila give any indication that he suspected that there was anything improper about any contributions from the Philadelphia area."  (Negron Mella Aff., Doc. No. 204-2, at 2.)  These statements are clearly exculpatory and may well be the only available means by which Acevedo Vila may be able to effectively respond to the government's contention that he was a culpable participant in the Philadelphia Conduit Contribution Scheme.  Although I recognize that Negron Mella's testimony will be vigorously challenged by the government, I cannot conclude on the present record that the government's impeachment evidence is so powerful that the exculpatory nature of Negron Mella's testimony will be completely undermined.  See United States v. Burns, 898 F.2d 819, 821 (1st Cir. 1990) (noting that only an "exceptional" probability of

damaging impeachment should constitute a basis for denying severance).

Second, Acevedo Vila has sufficiently demonstrated that Negron Mella will testify at Acevedo Vila's trial if the charges against the two defendants are tried separately.  On July 22, 2008, Acevedo Vila and Feldman jointly filed an affidavit in which Negron Mella stated that if "the trials of Mr. Feldman and Mr. Acevedo Vila are severed from my trial, I will testify on behalf of Mr. Feldman and Mr. Acevedo Vila at their trials." (Negron Mella Aff., Doc. No. 204-2, at 3.)  This satisfies Acevedo Vila's burden with respect to this factor.  See United States v. Nason, 9 F.3d 155, 159 (1st Cir. 1993) (determining that this prong can be satisfied by an affidavit from either the witness or his counsel).

The strongest argument against severance is that it will require a separate trial for Negron Mella that will expend additional judicial resources.  While a severance will almost always adversely impact judicial economy, I cannot allow efficiency to trump a defendant's right to a fair trial.  In this case, Negron Mella has agreed to testify at Acevedo Vila's trial even though it will take place before the charges against him are resolved.  See Transcript of Oral Argument at 201-02, United

States v. Acevedo Vila, No. 08-cr-036 (Sept. 23, 2008).  This concession will allow me to sever the charges against Negron Mella without continuing the trial date for the remaining defendants.  Moreover, while a separate trial of Negron Mella will be inconvenient for both the government and the court, his trial will be considerably shorter than the trial of the main case because he was allegedly involved in only one phase of one of the criminal schemes that will be considered during the trial of his co-defendants.  Accordingly, I grant Acevedo Vila's motion for severance (Doc. No. 180) and direct that the charges against Negron Mella shall be severed and tried after the trial of the remaining charges.

**B.    Transfer**

Feldman and Block argue that their trials should be transferred to the Eastern District of Pennsylvania pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure for the convenience of the relevant parties and in the interests of justice.

Feldman avers, inter alia, that he is a longtime resident of the Philadelphia area, his entire family lives in the Philadelphia area, and his business is located in the northeast.  Block avers that he is a lifelong resident of Philadelphia, his

family resides in Philadelphia, he works as an attorney in Pennsylvania, and he has little or no connection to Puerto Rico. Both men argue that the majority of possible witnesses are in Philadelphia or the surrounding area, a majority of the events in which they were allegedly involved occurred in Philadelphia or the surrounding area, most of the relevant documents were gathered in the area surrounding Philadelphia, their primary counsel are from the Philadelphia area, and a lengthy trial in Puerto Rico will disrupt their businesses and cause them serious personal and financial hardships as they will be forced to travel to and reside in Puerto Rico and pay for their counsel to do the same.  In opposition, the government disputes many of the defendants' contentions and argues that the motions for transfer should be denied because bifurcating the trial "would yield the absurd result of multiple trials in a single case." (Govt. Resp., Doc. No. 214, at 11.)

Upon a defendant's motion, a court "may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice."  Fed. R. Crim. P. 21(b).  In determining whether to grant a transfer motion pursuant to Rule 21(b), a district court has broad discretionary power, but should

consider: (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records likely to be involved; (5) the disruption of defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessability of place of trial; (9) the docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.  Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964).  "No one  factor is likely to be dispositive, but all should be considered under the circumstances."  United States v. Muratoski, 413 F. Supp. 2d 8, 9-10 (D.N.H. 2005).

    Venue in Puerto Rico is plainly proper here, given the fact that overt acts in furtherance of the conspiracy charged in Count 1 are alleged to have occurred in Puerto Rico.  See, e.g. United States v. Santiago, 83 F.3d 20, 25 (1st Cir. 1996).  Moreover, the government ordinarily has the right to decide within very broad limits where such a conspiracy charge is brought.  The government's power in this area is not absolute, however, and the rules of criminal procedure require that I independently assess defendants' request for transfer.

Weighing the relevant factors, Feldman and Block will undoubtedly suffer considerable physical, emotional, and economic hardship while facing trial in Puerto Rico, far from their homes in Philadelphia.  Facing a several month-long trial in Puerto Rico is more than a mere inconvenience for Feldman and Block, as they will be separated from family and friends, suffer disruption to their businesses, and incur great financial costs.  Flights to Puerto Rico are not short or inexpensive, and housing in Puerto Rico will also be required.  Feldman and Block will have to pay their own travel and housing costs, as well as the costs of their attorneys traveling from Pennsylvania.  In addition, the attorney fees to be incurred by Feldman and Block if they face a joint trial in Puerto Rico will likely be many times more than if their trials are severed and transferred.  In contrast, if a transfer is ordered, their trial is likely to be markedly shorter and less expensive than the currently anticipated three month trial in Puerto Rico.

The location of the events at issue also weighs in favor of transfer.  Even though much of the activity related to the overarching conspiracy charged in Count 1 took place in Puerto Rico or was directed towards Puerto Rico, most of the acts that

allegedly were undertaken in furtherance of the Collaborator Contribution Scheme were committed in the Philadelphia area.  For example, the meetings that Feldman attended and fund-raisers that he hosted, which are alleged to be part of the conspiracy, all took place in the Philadelphia area.

Although Feldman and Block argue that the location of documents and records likely to be involved weighs in favor of transfer because the majority of documents related to the charges against them were gathered from the Philadelphia area, I disagree and find that this factor is of no significance to the analysis. While many documents were collected in the Philadelphia area, other relevant documents are also located in Puerto Rico. Furthermore, in light of the availability of electronic storage and transfer of relevant documents, the location of documents does not strongly favor transfer.

I also do not find the location of witnesses to be a significant factor.  While most of the witnesses who will testify concerning Block's and Feldman's involvement in the conspiracy will be from the Philadelphia area, many of those witnesses will have to travel to Puerto Rico to testify at trials that will take place in that district even if I transfer the charges against

Block and Feldman.  Moreover, some of the likely witnesses are based in Puerto Rico and will have to travel to Philadelphia if the charges are transferred.[2]

This case is unusual because the government has chosen to try charges arising from several distinct criminal schemes in a single, lengthy trial.  Because Block and Feldman are allegedly involved in only one part of one of the several criminal schemes charged in the indictments, the vast majority of the evidence that the government will offer at the main trial will have no bearing on their guilt or innocence.  Thus, unless I grant their transfer request, they will be forced to sit through weeks of testimony in a courtroom far from their homes that is irrelevant to the charges against them.  While I recognize that it will be inconvenient for the government to require a separate trial for Block and Feldman, and it may well require certain witnesses to testify in several different trials, the harm that Block and Feldman will suffer if their transfer request is denied greatly outweighs the harm from separate trials that will result to the

---

[2] I have not treated docket condition as a relevant factor because I am confident that Block and Feldman will receive a speedy trial whether they are tried in Puerto Rico or Pennsylvania.

government, the court, and any affected witnesses.  Accordingly, defendants' motions to transfer (Doc. Nos. 178, 189) are granted.

### III.  CONCLUSION

For the foregoing reasons, the charges against Negron Mella are severed from the charges against the other defendants in this case and will be resolved after the trial of his co-defendants. The charges against Feldman and Block are transferred to the U.S. District Court for the Eastern District of Pennsylvania.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge
District of New Hampshire
Sitting by Designation

December 4, 2008

cc: Counsel of Record